UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL RYAN,

        Plaintiff,

Case No. 1:11-cv-1075

Hon. Gordon J. Quist

v.

UNKNOWN MALCOMB, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Lewis Malcolm (sometimes referred to as "Malcomb"), Kevin Corning, Richard Bracey (sometimes spelled "Bracy"), Steven Bird, Phillip Olson, Candace Hull and Adam Coburn (docket no. 19).

**I.    Background**

The court previously summarized plaintiff's claims against these seven defendants as follows:

> Plaintiff presently is incarcerated at the Bellamy Creek Correctional Facility. In his pro se complaint, Plaintiff sues Corrections Officers Unknown Malcomb, Unknown Party #1, Adam Coburn, Steven Bird, Phil Olson, Shawn Fuller, Bradley Kline, Jeff Shotwell, Marta Ramiro, Jerry Campbell and Unknown Sage; Doctor Unknown Party #2; Nurse Kevin Corning; Resident Unit Manager (RUM) Unknown Hull; Assistant Resident Unit Supervisor Brian Hadden; Inspector Unknown Wellington; Hearing Officer T. Wolven; Grievance Coordinator Unknown Party #3; Hearing Investigator Unknown Novak; Sergeant Richard Bracy; Assistant Deputy Warden Unknown Schooly; Deputy Warden Unknown Stoddard; Warden Ken McKee, Psychiatric Staff Unknown Par(y)(ies); Prison Health Services, Inc.; State of Michigan; Bellamy Creek Correctional Facility; and the Michigan Department of Corrections (MDOC).

Plaintiff suffers from back and neck injuries. He has had four spinal surgeries but still experiences bulging and herniated disks in his back and neck as well as severe arthritis, which has been untreated since his arrest in March 2010. Plaintiff has a ground floor medical restriction. In July 2011, Plaintiff was attempting to go to the yard, but he is housed in a cell that requires him to climb three stairs to the ground floor. Plaintiff crawled up the stairs to go to the yard. At the top of the stairs, Plaintiff asked Officer Malcomb to assist him but Malcomb refused. Plaintiff continued to crawl and Malcomb eventually retrieved a wheel chair for Plaintiff. However, Malcomb and another officer picked Plaintiff up and slammed him into the wheel chair. They carried Plaintiff down the stairs and wheeled Plaintiff into his cell. Malcomb and the other officer then dragged Plaintiff into the cell. They slammed Plaintiff onto his bed and punched Plaintiff in the back of his head. After the officers left, Sergeant Gilbert came to Plaintiff's door and asked what happened. Plaintiff requested medical attention. Nurse Leeland eventually examined Plaintiff. Nurse Leeland told Plaintiff that he needed to see the doctor. Sergeant Gilbert and other officers removed Plaintiff's belly chains but he was still in excruciating pain.

During Officer Olsen's rounds, Plaintiff requested medical attention again. When Plaintiff did not receive a response, Plaintiff covered his cell window to force a response. During subsequent rounds, Officer Olson ordered Plaintiff to uncover his window. Plaintiff refused. Officer Olson then grabbed a grievance and letter that Plaintiff had written and threw them on the floor. A few minutes later, RUM Hull came to Plaintiff's cell door. Hull took Plaintiff's grievance and letter and told Plaintiff that she would call medical staff. After she left, Nurse Corning came to Plaintiff's cell but refused Plaintiff's request to see a doctor. Plaintiff then told Corning to "go hang himself." (Compl., docket #1-1, Page ID#9.) Corning apparently relayed to Officer Bird and RUM Hull that Plaintiff had threatened to hang himself. Corning told Bird to watch Plaintiff. Shortly thereafter, RUM Hull returned. Plaintiff informed Hull that Corning refused to give medical treatment to Plaintiff.

Shortly thereafter, Sergeant Bracy instructed Plaintiff to cuff up. Plaintiff could not place the cuffs on his hands due to his injuries. After Bracy consulted with staff and Nurse Corning, they proceeded to extract Plaintiff from his cell. In violation of MDOC policy, Plaintiff complains that the officers did not gear up for the extraction or record the incident. During the extraction, Officer Coburn put Plaintiff in a head lock and twisted Plaintiff's neck while other officers twisted Plaintiff's body. Plaintiff struggled with the officers. While in the headlock, Plaintiff bit Officer Coburn because Plaintiff could not breathe and he thought Coburn would further injure his neck. Plaintiff complains that the officers' actions increased his pain, caused his left hand to lose strength, and sent him into a psychotic episode.

2

>During his psychotic episode, Plaintiff bit himself, spit blood on the walls, painted with his blood and swore at everyone. Plaintiff also threw his tray out of the food slot. Officer Sage claimed that Plaintiff hit him with the food tray. Sage gave Plaintiff a misconduct ticket for assaulting him with the tray. When Plaintiff questioned Sage about the ticket, Sage told Plaintiff that he should not have bitten Officer Coburn. The hearing officer ultimately found Plaintiff guilty on two assault tickets, one for assaulting Officer Sage with the food tray and another unknown ticket. For the two misconduct tickets, Plaintiff complains that he did not have his misconduct hearings in the time required by MDOC policy. Hearing Officer Wolven mentioned that Plaintiff's hearing investigations caused the delay in the misconduct hearings. However, Plaintiff complains that a delay in a hearing investigation is not a valid reason for delaying a misconduct hearing according to MDOC policy. Plaintiff finally claims that Hearing Investigator Novak refused to give Plaintiff his hearing packet and appeal forms for his misconduct tickets.
>
>Plaintiff complains that while in observation, he was unable to file a grievance for the assault on Officer Sage and to process his grievance against Officer Malcomb and Officer Unknown Party #1. At some point, Plaintiff met with the state police and talked about pressing charges. Plaintiff, however, does not elaborate in his complaint on what incident he would press charges. Inspector Wellington told Plaintiff to kite him if Plaintiff wanted to press charges. Plaintiff kited Wellington about pressing charges to no avail.
>
>Because of the assaults, Plaintiff complains that he has lost strength in his left hand, was in agony for 7 to 10 days without medical treatment, and has experienced depression and paranoia. Plaintiff claims that his mental health issues are still untreated.
>
>Plaintiff alleges that Defendants violated his constitutional rights by using "excessive force, retaliatory practices and deliberate indifference." (Compl., docket #1-1, Page ID#11.) He states that "they've also filed assault charges on [him] in continued retaliation." (*Id.*)
>
>For relief, Plaintiff request injunctive relief and monetary damages.

Opinion at pp. 2-5 (footnotes omitted) (docket no. 5). Upon initial screening, the court determined that plaintiff's allegations were sufficient to state Eighth Amendment claims against defendants Malcolm, Corning, Bracey, Coburn, Bird, Olson, Hull, Prison Health Services, Inc., Doctor Unknown Party #1 and Psychiatric Staff Unknown Part(y)(ies). *Id.* at p. 15.

### II.     Defendant Hull

As an initial matter, the court dismissed defendant Hull from this action on January 20, 2012. *See* Order (docket no. 12). Because defendant Hull has been dismissed from this action, the motion for summary judgment should be denied as moot as to her.

### III.    Defendants' motion for summary judgment

#### A.     Legal Standard

Defendants have moved for summary judgment on various grounds, including failure to exhaust administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

5

problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Defendants Malcolm, Corning, Bracey, Coburn, Bird, and Olson are not named in any grievances

Richard D. Russell, the Manager of the Grievance Section of the MDOC, has reviewed the grievance records and identified five grievances which plaintiff exhausted through Step III: LRF 2011-03-0438-12d1; IBC 2011-08-2250-12f3; IBC 2011-06-1400-12i3; IBC 2011-08-2365-07f; and IBC 2011-07-1724-28a. Affidavit of Richard Russell at ¶¶ 1-18 (docket no. 20-2). Mr. Russell further stated that "[a] review of these grievances reveals that he did not name the following defendants: Lewis Malcolm, Kevin Corning, Richard Bracey, Steven Bird, Phillip Olson, Candace Hull or Adam Coburn." *Id.* at ¶ 17.

6

Plaintiff does not dispute that he failed to name these defendants. In his response brief, plaintiff argues that "he was prevented and denied access to the grievance system." Plaintiff's Response (docket no. 29 at p. 11). Plaintiff asserts that the grievance coordinator refused to process his initial grievance, that staff would not file grievances when he was under observation, and that his kites for grievance forms were ignored. *Id.* at p. 12. Plaintiff states that he "has also included an affidavit of fact concerning denial of access to the grievance system marked as exhibit 3." *Id.*

"Exhibit 3" is an unsigned, undated, and unnotarized document, entitled "Affidavit of Fact concerning denial of access to the grievance system." Docket no. 29-1 at p. 4. This undated paper cannot be considered an affidavit for purposes of rebutting Mr. Russell's affidavit or creating a genuine issue of material fact with respect to exhaustion. Specifically, "Exhibit 3": does not identify the affiant; does not include the signature of the affiant; is not signed by a notary; and does not contain a notary jurat vouching for the truthfulness of the signed record. *See* M.C.L. § 55.265(a) (defining a "jurat" as "a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed record"). The absence of a jurat or other evidence of verification requires a court to find that the document fails to constitute an affidavit. *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). *See Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930) ("[a] purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all").

Viewing the evidence in the light most favorable to the non-moving party (plaintiff), this unsigned affidavit does not rebut the facts as stated in Mr. Russell's affidavit nor create a

7

genuine issue of material fact with respect to the issue of exhaustion. Plaintiff has failed to properly exhaust a grievance against defendants Malcolm, Corning, Bracey, Coburn, Bird, and Olson. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, these defendants are entitled to summary judgment.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment (docket no. 19) be **GRANTED** as to defendants Malcolm, Corning, Bracey, Coburn, Bird and Olson, and **DENIED** as to former defendant Hull.

Dated: August 2, 2012 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).